1  Vanessa R. Waldref
2  United States Attorney
   Tyler H.L. Tornabene
3  Daniel Hugo Fruchter
   Assistant United States Attorneys
4  Post Office Box 1494
5  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
6

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 0 7 2022

SEAN F. McAVOY, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

7
8
## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

9
10  UNITED STATES OF AMERICA,
    THE STATE OF WASHINGTON, ex
11  rel, and DAVID YAM, M.D., an
    individual and as relator,

No. 4:20-cv-05004-SMJ

12
                        Plaintiffs,
13
        v.
14

~~FILED UNDER SEAL~~

PLAINTIFFS' NOTICE OF
DISMISSAL OF CERTAIN CLAIMS
PURSUANT TO FED. R. CIV. P.
41(a)(1) AND STIPULATED
REQUEST TO UNSEAL

15  PROVIDENCE HEALTH &
16  SERVICES, a Washington non-profit
    corporation, d/b/a PROVIDENCE ST.
17  MARY MEDICAL CENTER,

18                      Defendant.
19

20  **NOTICE OF DISMISSAL OF CERTAIN CLAIMS**
    **PURSUANT TO FED. R. CIV. P. 41 AND REQUEST TO UNSEAL**
21

22      Pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(2) and (4), and Rule

23  41(a)(1) of the Federal Rules of Civil Procedure, the United States, by and through

24  Vanessa R. Waldref United States Attorney for the Eastern District, the State of

25  Washington, and David Yam MD ("Relator"), by and through his counsel of record,

26  (herein collectively "Plaintiffs" where appropriate) hereby dismiss certain claims in

27  the above action. As the United States has previously advised the Court, (*see* ECF

28  No. 16), the Parties have reached a Settlement Agreement resolving certain claims

Notice of Dismissal and Request to Unseal - 1

1  in this matter, attached hereto as Exhibit 1. Relator's dismissal of this action is with
2  prejudice as to all claims articulated in the Relator's Complaint (ECF No. 1) with
3  the exception of the Relator-Defendant Claims specified below. The United States'
4  dismissal and the State of Washington's dismissal is with prejudice to the extent of
5  the Covered Conduct as that term is defined in the attached Settlement Agreement.
6  The United States' dismissal and the State of Washington's Dismissal is otherwise
7  without prejudice only as to the United States and the State of Washington,
8  respectively.

9      Pursuant to 31 U.S.C. § 3730(d), Relator claims entitlement to reasonable
10  attorney fees, expenses, and costs from Defendant and has claims against the
11  Defendant for retaliation under 31 U.S.C. § 3730(h)(1) and RCW 74.66.090(1) as
12  well as a Wrongful Wage Withholding claim under RCW 49.52.050. These Relator
13  claims against the Defendant are referred to collectively herein as the "Relator-
14  Defendant Claims" where appropriate.  The Relator and the Defendant have not yet
15  finalized an agreement resolving the Relator-Defendant Claims.  Accordingly, the
16  Parties request that the Court retain jurisdiction as to the Relator-Defendant Claims.
17  Except as explicitly set forth in the attached Settlement Agreement and what may be
18  agreed to by the Defendant and the Relator, or subsequent order of the Court,
19  regarding the Relator-Defendant Claims as to the Relator and the Defendant, each
20  party shall bear its own attorney's fees.  The Parties further respectfully request that
21  the Court retain jurisdiction to enforce the terms of the Settlement Agreement.

22      Additionally, pursuant to the False Claims Act, 31 U.S.C. § 3730, the
23  Plaintiffs respectfully request that the Court unseal this action and certain documents
24  in this action. Specifically, the Plaintiffs request that all documents be unsealed
25  except ECF Nos. 5, 8, 11, and 14.  These documents contain details of the United
26  States' investigation and of confidential settlement discussions between the Parties
27  and were provided to the Court alone for the sole purpose of evaluating the United
28  States' extension requests. *See* 31 U.S.C. § 3730(b)(3).  Plaintiffs respectfully

Notice of Dismissal and Request to Unseal - 2

1  request that the Court unseal this action on **Monday, April 11, 2022, at 10:00 am**
2  so that the United States can timely notify the public regarding the Parties' resolution.

3      Because the Defendants have not answered or filed a motion for summary
4  judgment, a stipulation of dismissal is not required pursuant to Fed. R. Civ. P.
5  41(a)(l)(A)(i). However, undersigned counsel have conferred with counsel for the
6  Defendants, who are aware of the dismissal as agreed to and who concur in the
7  request for unsealing.

8      A proposed order accompanies this filing.

9      RESPECTFULLY SUBMITTED this 7th day of April, 2022.

Vanessa R. Waldref
United States Attorney

Tyler H.L. Tornabene
Daniel Hugo Fruchter
Tyler.H.L.Tornabene@usdoj.gov
daniel.fruchter@usdoj.gov
Assistant United States Attorneys
*Attorneys for Plaintiff United States*

*s/ Malaika M. Eaton*
Malaika M. Eaton
Daniel M. Weiskopf
James G. Diehl
600 University Street, Suite 2700
Seattle, WA 98101-3134
Telephone (206) 467-1816 |
Email: meaton@mcnaul.com
Email: DWeiskopf@mcnaul.com
Email: JDiehl@mcnaul.com

*Counsel for Relator-Plaintiff*

*s/James Douglas Boling*
James Douglas Boling
Assistant Attorney General
Washington State Medicaid Fraud
Control Division
Phone: 206-389-3837
Email: doug.boling@atg.wa.gov
*Counsel for Washington State*
*Medicaid Fraud Control Division*

Notice of Dismissal and Request to Unseal - 3

# **EXHIBIT 1**

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), the Defense Health Agency (DHA), acting on behalf of the TRICARE Program; the Office of Personnel Management (OPM), which administers the Federal Employees Health Benefits Program (FEHBP), the U.S. Department of Veterans Affairs (VA), which administers the VA Community Care Program (collectively, the "United States"); the State of Washington, acting through the Washington Office of the Attorney General and on behalf of the Washington Health Care Authority (HCA) (collectively the "State"); Providence Health & Services Washington (hereinafter "Providence"); and Relator David Yam, M.D. (hereafter "Relator"); through their authorized representatives. The United States and the State are collectively referred to herein as the "Government", and the Government, Providence, and Relator are collectively referred to herein as the "Parties."

## FACTUAL RECITALS

A.    Providence owns and operates St. Mary Medical Center (SMMC), a hospital located in Walla Walla, Washington. SMMC has multiple departments, one of which is the neurosurgery department. Between July 1, 2013 and November 13, 2018 (hereinafter the relevant time period), Providence, through SMMC, submitted claims to and accepted reimbursement from Medicare, the FEHBP, TRICARE, VA Community Care, and other federally-funded health care programs, as well as from the State of Washington Medicaid program jointly funded by the United States and the State of Washington, for neurosurgery and other services provided at and by SMMC.

B.     During the relevant time period, Dr. A and Dr. B were neurosurgeons employed by Providence at SMMC. Dr. A. was a neurosurgeon employed by Providence at SMMC during the entire relevant time period, while Dr. B was a neurosurgeon employed by Providence at SMMC between November 2015 and May 2017. During the entire relevant time period, Relator was the Medical Director of Neurosurgery at SMMC.

C.     During the relevant time period, SMMC's neurosurgery department including Dr. A, performed a high volume of multi-level spinal surgeries. SMMC staff neurosurgeons, including Dr. A, were paid compensation based on a personal productivity metric known as Work Relative Value Units (wRVUs), which were calculated based on a value assigned under the Medicare Physician Fee Schedule to the services personally furnished by the individual neurosurgeon. SMMC neurosurgeons, including Dr. A, were paid compensation for each wRVU that they generated, with no cap on the wRVU-based compensation that could be earned. In this manner, the greater the number of procedures of higher complexity that the neurosurgeon performed, the greater the compensation the neurosurgeon received. Between 2014 and 2018, Dr. A's personal productivity, as measured by wRVUs, exceeded the 90th percentile of physician market survey data, and he was among the top producing neurosurgeons in the Providence system. Based on this productivity, between 2014 and 2017, Dr. A earned between $2.5 million and $2.9 million annually.

D.     At various times during the relevant time period, Providence received both positive and negative information about Dr. A and Dr. B. However, Providence personnel also had and articulated concerns regarding the quality of care provided by Dr. A and Dr. B, as well as the medical necessity of surgical procedures performed by Dr. A. These included concerns that Dr. A: (1) completed medical documentation with falsified, exaggerated, and/or inaccurate diagnoses that did not accurately reflect the patient's true medical condition in order to obtain

2

reimbursement for surgical procedures performed by Dr. A; (2) performed certain surgical procedures that did not meet the medical necessity guidelines and requirements for reimbursement set forth by Medicare and other government health insurance programs; (3) "over-operated", i.e., performed a surgery of greater complexity and scope than was indicated and medically appropriate; and (4) jeopardized patient safety by attempting to perform an excessive number of overly complex surgeries. These concerns also included concerns that Dr. A and Dr. B: (1) endangered the safety of SMMC patients; (2) created an excessive level of complications, negative outcomes, and necessary additional operations as a result of their surgeries; (3) performed surgical procedures on certain candidates who were not appropriate candidates for surgery given their medical histories, conditions, and contraindications; and (4) failed to adequately and accurately document certain procedures, diagnoses, and complications.

      E.      On February 23, 2017, as a result of concerns articulated by SMMC medical staff, Providence, as the employer, placed Dr. B on administrative leave and, shortly thereafter, initiated an independent analysis of certain concerns articulated as to Dr. B with regard to certain specific patients. On May 8, 2017, Providence accepted Dr. B's resignation. Providence, as the employer, did not report Dr. B to the National Practitioner Data Bank or the Washington State Department of Health, nor did Providence take any action to refund Medicare or Medicaid for surgical procedures performed by Dr. B for which Providence had previously sought and received reimbursement.

      F.      On May 22, 2018, as a result of concerns articulated by SMMC medical staff, Providence, as the employer, placed Dr. A on administrative leave and initiated an independent analysis of certain concerns articulated as to Dr. A with regard to certain specific patients.  On November 13, 2018, Dr. A submitted his letter of resignation to Providence, which Providence accepted. Providence, as the employer, did not report Dr. A to the National Practitioner Data Bank or the Washington State Department of Health.

3

G.      On January 13, 2020, Relator filed a qui tam action in the United States District

Court for the Eastern District of Washington captioned United States ex rel. Yam v. Providence

Health and Services, 4:20-cv-05004-SMJ (E.D. Wash.), pursuant to the qui tam provisions of the

False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Relator alleged that Providence

submitted and caused to be submitted to the United States and the State of Washington false

claims for neurosurgery procedures performed during the relevant time period by Dr. A and Dr.

B. The United States intervened in the Civil Action on January 14, 2022.

H.      The Government contends that it has certain civil claims against Providence

arising from allegedly false claims for payment submitted by Providence to Medicare, Washington

State Medicaid, TRICARE, VA Community Care, and FEHBP (hereinafter "the Federal Health

Programs") during the relevant time period for neurosurgery services performed by Dr. A and Dr.

B that did not meet the criteria for reimbursement under the Federal Health Programs, were

medically unnecessary, or were otherwise improper. The Government further contends that

Providence failed to take appropriate action in response to those concerns. Finally, the

Government contends that Providence failed to have and/or timely implement adequate safeguards

and controls with regard to Dr. A and Dr. B to timely prevent, detect, deter,and cease the

performance of medically unnecessary neurosurgical procedures. The conduct described in this

paragraph, together with the agreed-upon facts and conduct set forth above in Recitals A through

F as they relate to claims for neurosurgery services performed by Dr. A and Dr. B to Federal

Health Programs during the relevant time period, is hereinafter referred to as the "Covered

Conduct."

I.      The Government contends that it has certain civil claims against Providence

under the False Claims Act, codified at 31 U.S.C. §§ 3729-3733, the Medicaid Fraud False

Claims Act, codified at RCW 74.66, the Fraudulent Practices Act, codified at RCW 74.09.210, and the common law for allegedly engaging in the Covered Conduct.

      J.      Providence admits, acknowledges, and agrees that the facts set forth in Recitals A through F above are true and accurate. Providence does not admit the contentions set forth in Recitals H or I. While Providence agrees with the facts set forth in Recitals A through F, above, Providence does not concede that liability arises, under the False Claims Act or any other cause of action, from those facts. This Settlement Agreement is therefore not an admission of liability by Providence.

      To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

      1.      Providence shall pay to the Government $22,690,458 (herein "the Settlement Amount"), of which $10,459,388 is restitution. Of the Settlement Amount, $21,592,186 is owed tothe United States, which shall be paid within fourteen (14) days of the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of Washington. Of the Settlement Amount, the total federal and state Medicaid share is $1,830,622, with $732,350 of that amount owed to the United States, and $1,098,272 of that amount owed to the State of Washington, which shall be paid within fourteen (14)days of the Effective Date of this Agreement pursuant to written instructions to be provided by the Washington Office of the Attorney General.

      2.      Conditioned upon the Government receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay $3,994,554 to Relator by electronic funds transfer,and the State of Washington shall pay $203,180 to Relator by electronic funds transfer, to the trust account of Relator's counsel (hereafter the "Relator's Share").

3.      Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and conditioned upon Providence's full payment of the Settlement Amount, the Government releases Providence, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; dbas; and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the Government has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Medicaid Fraud False Claims Act, RCW 74.66; the False Practices Act, RCW 74.09.210, or the common law theories of payment by mistake, unjust enrichment, negligent misrepresentation, and fraud.

4.      Subject to the exceptions in Paragraphs 6 and 10 below, and upon the Government's receipt of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Providence, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; dbas; and the corporate successors and assigns of any of them, from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733 or the Medicaid Fraud False Claims Act, RCW 74.66.  Relator does not release Providence from any personal claims he has against Providence, including claims related to his employment and claims arising under 31 U.S.C. § 3730(h).

5.      In consideration of the obligations of Providence in this Agreement and the Corporate Integrity Agreement (CIA), entered into between OIG-HHS and Providence, and conditioned upon Providence's full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42

6

U.S.C. § 1320a-7b(f) against Providence under 42 U.S.C. § 1320a-7a (Civil Monetary Penalty

Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other

prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in

Paragraph 6 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights

to comply with any statutory obligations to exclude Providence from Medicare, Medicaid, and

other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based

upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking

action against entities or persons, or for conduct and practices, for which claims have been

reserved in Paragraph 6, below.

6. Notwithstanding the releases given in Paragraphs 3, 4, and 5 of this Agreement, or

any other term of this Agreement, the following claims of the Government are specifically

reserved and are not released:

<blockquote>

a.    Any criminal, civil, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code) or state revenue codes;

b.    Any criminal liability;

c.    Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory exclusion from Federal or State health care programs;

d.    Any liability to the Government (or its agencies) for any conduct other than the Covered Conduct;

e.    Any liability based upon obligations created by this Agreement;

f.    Any civil or administrative liability that any person or entity, including Providence have or may have to the Federal, State or individual consumers or government program payers under any statute, regulation or rule not expressly covered by the release in this Agreement, including but not

</blockquote>

7

limited to, any and all of the following claims: (i) antitrust violations; (ii) claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws;

g.   Any liability which may be asserted on behalf of any other payers or insurers, including those that are paid by the Government programs on a capitated basis;

h.   Any liability for expressed or implied warranty claims or other claims for defective or deficient products and services provided by Providence;

i.   Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

j.   Any liability based on a failure to deliver goods or services due; and,

k.   Any liability of individuals including, but not limited to, Dr. A and Dr. B.

7.    Except as expressly stated herein, this agreement is not intended to affect the terms of any provider agreement(s), contracts or other agreements that Providence has or may have with HCA or any State of Washington agency.

8.    Providence fully and finally releases the Government, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Providence has asserted, could have asserted, or may assert in the future against the Government and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the Government's investigation and prosecution thereof.

9.    The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare or Medicaid contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Providence agrees not to resubmit to any Medicare or Medicaid

8

contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

10.    Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agrees and confirms that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action. For the avoidance of doubt, Relator does not release Providence from any personal claims he has against Providence, including claims related to his employment and claims arising under 31 U.S.C. § 3730(h).

11.    Providence agrees to the following:

a.    Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Providence or its Companies, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement;

(2)    the Government's audits and civil and criminal investigations of the matters covered by this Agreement;

(3)    Providence's investigation, defense, and corrective actions undertaken in response to the Government's audits and civil and any criminal

9

investigations in connection with the matters covered by this Agreement
(including attorney's fees);

(4)     the negotiation and performance of this Agreement;

(5)     the payment Providence makes to the Government pursuant to this
Agreement; and

(6)     the negotiation of, and obligations undertaken pursuant to the CIA to: (i)
retain review organizations to perform reviews as described in Section III of
the CIA; and (ii) prepare and submit reports to the OIG-HHS;

are unallowable costs for government contracting purposes and under the Medicare Program, and
Medicaid Program (hereinafter referred to as Unallowable Costs). However, nothing in
paragraph 11.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the
status of costs that are not allowable based on any other authority applicable to Providence.

       b.    Future Treatment of Unallowable Costs:  Unallowable Costs shall be
separately determined and accounted for, and Providence shall not charge such Unallowable
Costs directly or indirectly to any contracts with the United States or any State Medicaid
program, or seek payment for such Unallowable Costs through any cost report, cost statement,
information statement, or payment request submitted by Providence, or any of its subsidiariesor
affiliates to Medicare, and Medicaid Programs.

       c.    Treatment of Unallowable Costs Previously Submitted for Payment:
Providence further agrees that within 90 days of the Effective Date of this Agreement it shall
identify to applicable Medicare fiscal intermediaries, carriers, and/or contractors, and Medicaid
fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments
previously sought from the Government, including, but not limited to, payments sought in any
cost reports, cost statements, information reports, or payment requests already submitted by
Providence, or any of its subsidiaries or affiliates, and shall request, and agree, that such cost

10

reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Providence agrees that the Government, at a minimum, shall be entitled to recoup from Providence any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice, Medicaid Fraud Control Unit, and/or the affected agencies. The Government reserves its rights to disagree with any calculations submitted by Providence, or any of their subsidiaries or affiliates on the effect ofinclusion of Unallowable Costs (as defined in this Paragraph) on Providence, or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

        d.      Nothing in this Agreement shall constitute a waiver of the rights of the Government to audit, examine, or re-examine Providence's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

12.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 13 (waiver for beneficiaries paragraph), below.

13.     Providence agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payers based upon the claims defined as Covered Conduct.

14.     Except as otherwise expressly provided in this Agreement (e.g. Paragraph 15 below), each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

15.     Upon receipt of the Settlement Amount, the United States, the State of

Washington, and Relator shall file a Dismissal in the Civil Action, pursuant to Fed. R. Civ. P. 41.

Dismissal shall be with prejudice to Relator.  Dismissal shall be with prejudice as to the United

States to the extent of the Covered Conduct, and otherwise without prejudice to the United States

only.  Relator's claims pursuant to 31 U.S.C. § 3730(d) and RCW 74.66.070(1)(c) for attorney

fees, expenses, and costs, and for retaliation pursuant to 31 U.S.C. § 3730(h) and RCW

74.66.090(1) and for wrongful wage withholding pursuant to RCW 49.52.050 and for any other

personal claims of the Relator, which are not resolved by this Settlement Agreement, shall not be

dismissed, and in no circumstance does any term of Settlement Agreement constitute a waiver of

any of those claims.

16.     Each party and signatory to this Agreement represents that it freely and

voluntarily enters into this Agreement without any degree of duress or compulsion.

17.     This Agreement is governed by the laws of the United States and the State of

Washington. The exclusive jurisdiction and venue for any dispute relating to this Agreement is

the United States District Court for the Eastern District of Washington. For purposes of

construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to

this Agreement and shall not, therefore, be construed against any Party for that reason in any

subsequent dispute.

18.     This Agreement constitutes the complete agreement between the Parties. This

Agreement may not be amended except by written consent of the Parties.

19.     The undersigned counsel and agency representatives represent and warrant that

they are fully authorized to execute this Agreement on behalf of the persons and entities

indicated below.

20.     This Agreement may be executed in counterparts, each of which constitutes an

original and all of which constitute one and the same Agreement.

21.    This Agreement is binding on Providence's and Relator's successors, transferees, heirs, and assigns.

22.    All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

23.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 3/17/2022       BY: _____

Dan Fruchter
Assistant United States Attorney
Eastern District of Washington

DATED: 3/17/2022       BY: _____

Tyler H.L. Tornabene
Assistant United States Attorney
Eastern District of Washington

DATED: _____     BY: _____

Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health and Human Services

THE STATE OF WASHINGTON

DATED: _____     BY: _____

Larissa Payne , Director
Senior Assistant Attorney General
Medicaid Fraud Control Unit
Washington Office of the Attorney General

DATED: _____     BY: _____

MaryAnne Lindeblad
Medicaid Director
Washington Health Care Authority

14

THE UNITED STATES OF AMERICA

DATED: _____    BY:    _____
                                Dan Fruchter
                                Assistant United States Attorney
                                Eastern District of Washington


DATED: _____    BY:    _____
                                Tyler H.L. Tornabene
                                Assistant United States Attorney
                                Eastern District of Washington


DATED: _____    BY:    _____
                                Lisa M. Re
                                Assistant Inspector General for Legal Affairs
                                Office of Counsel to the Inspector General
                                Office of Inspector General
                                U.S. Department of Health and Human Services


THE STATE OF WASHINGTON

DATED: 3/15/2022    BY:    *Larissa Payne*
                           _____
                           Larissa Payne, Director
                           Medicaid Fraud Control Division
                           Washington Office of the Attorney General


DATED: 3/15/2022    BY:    _____
                           Dr. Charissa Fotinos
                           Interim Medicaid Director
                           Washington Health Care Authority

14

DocuSign Envelope ID: A6A2468E-CB26-4B78-8519-1A18E5B17AAA

PROVIDENCE

DATED: _March 15, 2022_    BY: _____

Gregory Hoffman
President and Chief Executive Officer
Providence Health & Services Washington

DATED: March 15, 2022    BY: _____

Robert G. Homchick
Davis Wright Tremaine, LLP
Counsel for Providence Health Services Washington

DATED : March 15, 2022    BY _____

Jeffrey B. Coopersmith
Orrick Herrington & Sutcliffe LLP
Counsel for Providence Health & Services Washington

**RELATOR**

DATED: 3/15/2012       BY: _____

David Yam, M.D.

DATED: 3/15/2022       BY: *Malaika M. Eaton*

Malaika Eaton

McNaul, Ebel, Nawrot & Helgren PLLC

Counsel for Relator David Yam

16